KYLE FARAGE,

                Plaintiff,

v.                                                                                          Case No. 22-cv-681-pp

DR. MURPHY, D. PROEHL,
JULIE LUDWIG, and WARDEN EPLETT,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT (DKT. NO. 9) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 10)

        Kyle Farage, who is incarcerated at the Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, to amend the complaint, dkt. no. 9, and to appoint counsel, dkt. no. 10. The decision also screens the plaintiff's complaint, dkt. no. 1, and his proposed amended complaint, dkt. no. 9-1.

I.     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 14, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $10.65. Dkt. No. 6. The court received that fee on July 12, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.  Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

2

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

In his original complaint, the plaintiff sues Dr. Murphy, Nurse D. Proehl, Nurse and Health Services Unit manager Julie Ludwig and Warden Eplett, all of whom work at Oshkosh Correctional Institution. Id. at 1-2. The plaintiff alleges that on April 22, 2022, Murphy told him to use "esortic [sic] means" instead of actual medical treatment to treat his ingrown toenails, severe pain in his "GI system" and severe anxiety and depression. Id. at 2. He alleges that six days later, Proehl failed to investigate his symptoms. Id. The plaintiff also alleges that on May 15, 2022, Ludwig failed to investigate his claim against Murphy. Id. He also states that Eplett failed to take responsibility for her employees' actions. Id. at 2-3. For relief, the plaintiff seeks compensation for his pain and suffering, future medical problems and emotional distress. Id. at 4.

Less than a month after the plaintiff filed his original complaint, he filed a motion to amend the complaint in which he states that he believes his original complaint does not give enough detail to properly state a claim and that he has found limited assistance to clarify and support his original complaint allegations. Dkt. No. 9. Attached to the plaintiff's motion is a document that appears to be a proposed amended complaint. Dkt. No. 9-1. This document consists of a "Facts" section that includes a more detailed description of his original complaint allegations, id. at 1-3, three pages of "Allegations" (one for Dr. Murphy, one for Ludwig and one for RN Felts), id. at 4-6, and a page titled "Prayer for Relief," id. at 7. The proposed amended complaint does not include a case caption.

In the proposed amended complaint, the plaintiff alleges that when he arrived at Oshkosh Correctional Institution on September 19, 2021, a nurse saw him for blood in his stool. Dkt. No. 9-1 at ¶1. He states that on April 9, 2022, he was seen and evaluated for abdominal pain and bloody stools, and he was reissued a stool softener. Id. at ¶2. Four days later, a nurse allegedly saw the plaintiff for his abdominal pain and bloody stools, and "[n]othing was adequately done for his pain." Id. at ¶3. The plaintiff alleges that three days after that (April 16, 2022), he experienced severe abdominal pain, bloody stools and vomiting. Id. at ¶4. He says that he informed unit staff who referred him to health services, and that the on-call doctor sent him to the emergency room. Id. The emergency room doctor allegedly advised prison officials to refer the plaintiff for a colonoscopy and endoscopy. Id.

The plaintiff alleges that on April 22, 2022, Murphy saw the plaintiff for a follow-up appointment where the plaintiff brought up his medical issues of "bleeding from his rectum, anxiety, weight problems, pain in both his big toes,

vomiting, food intake, and fatigue[.]" Id. at ¶5. In response, Murphy allegedly stated, "you should go to church and you might feel better." Id. The plaintiff states that six days later, he sent a Health Services Request to the Health Services Unit about the comment that Murphy made and also that he was charged more than one $7.50 medical copay for his ongoing medical problems. Id. at ¶6.

On May 15, 2022, Ludwig allegedly responded to the plaintiff's Health Services Request, explaining that the $7.50 medical copay was for a prior nursing sick call and also noting that "per DAI 316.00.01 just because you have been seen for something in the past does not mean you have unlimited visits in the future." Id. at ¶7. That plaintiff states that Ludwig did not address Dr. Murphy's alleged comment, *i.e.*, "the on-going serious medical needs of her patient . . . thus [deliberately] ignoring the body of the complaint by turning a blind eye." Id.

The plaintiff alleges that he submitted an inmate grievance, id. at ¶8, and on June 10, 2022, he received a response form the institution complaint examiner stating, "The issue of this complaint is reduced to [the plaintiff's] word against Dr. Murphy's documentation. Lacking any other credible evidence, the ICE is placed in the position of having to speculation and that would not be proper when making a recommendation to the Reviewing Authorities," id. at ¶9.

The plaintiff alleges that on June 23, 2022, a nurse saw him for abdominal pain and that nothing was done for his pain. Id. at ¶10. Three days later, a nurse allegedly saw him and "eventually" sent him to the emergency room where he received pain medication and an anti-spasmatic medication. Id. at ¶11. The plaintiff states that the emergency room doctor strongly

5

Case 2:22-cv-00681-PP   Filed 10/28/22   Page 5 of 13   Document 14

recommended that the plaintiff be scheduled for an "EGD/Colonoscopy." Id. He also alleges that on June 28, 2022, he told unit staff that he passed "a lot of blood out of his rectum and was in excruciating pain." Id. at ¶12. The plaintiff states that unit staff contacted Health Services and "spoke to a Ms. Felts about the plaintiff's conditions and refused to see him, telling him to put in another Health Services Request[.]" Id.

The plaintiff claims that Murphy, Ludwig and Felts acted with deliberate indifference to his serious medical needs by failing to treat or by ignoring his medical conditions. Id. at 4-6. He seeks compensatory damages and injunctive relief. Id. at 7.

C. Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated person. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated person's health. Id.

(citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

Under this standard and the liberal pleading rule applicable to unrepresented litigants, the allegations in the proposed amended complaint state an Eighth Amendment against Murphy, Ludwig and Felts. But the proposed amended complaint does not include a caption. Under Rule 10(a) of the Federal Rules of Civil Procedure "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties . . . ". Compliance with this aspect of Rule 10(a) is mandatory. As the Seventh Circuit explained in Myles v. United States, 416 F.3d 551 (7th Cir. 2005), in order to make someone a party, the plaintiff must name the individual in the case caption and arrange for service of process. Myles, 416 F.3d at 551; see also Owens v. Duncan, 798 F. App'x 9, 12 (7th Cir. 2020) ("Pro se litigants must name the defendants whom they intend to sue.").

A party may amend his pleading once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(A). The original complaint has not yet been served (because the law requires the court to screen it before ordering service), so the plaintiff may amend his complaint without leave of the court. The court will grant the plaintiff's motion to amend. Because the proposed amended complaint does not include a caption and name the parties the plaintiff wishes to sue, however, the court will require that if he wants to proceed, the plaintiff must file an amended complaint.

The court is enclosing a copy of its amended complaint form and instructions. The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b) (E.D. Wis.). The plaintiff must list the case number for this

7

case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaints and must be complete in itself; the plaintiff cannot refer the court or other readers back to facts alleged in the previous complaints.

When writing his amended complaint, the plaintiff must provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

### III. Motion to Appoint Counsel (Dkt. No. 10)

The plaintiff has filed a motion to appoint counsel. Dkt. No. 10. He states that he cannot afford a lawyer, that this case involves complex issues, that he has extremely limited access to the law library and that he has very limited knowledge of the law. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult

8

Case 2:22-cv-00681-PP   Filed 10/28/22   Page 8 of 13   Document 14

decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked

9

time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not demonstrated that he has tried to find a lawyer on his own, so he has not satisfied the threshold requirement necessary for the

court to recruit counsel for him. And at this early stage, the plaintiff needs only to file an amended complaint. The court has provided him with instructions and a form to use to prepare that amended complaint; he may simply copy the allegations from his proposed amended complaint onto the new form and put the necessary information in the caption on the first page. The plaintiff is capable of filing an amended complaint. The court will deny without prejudice the motion to appoint counsel.

**IV. Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion for leave to amend complaint. Dkt. No. 9.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 10.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **November 18, 2022**. If the court receives an amended complaint by the end of the day on November 18, 2022, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive either an amended complaint or a request for more time to file one by the November 18, 2022 deadline, the court may dismiss this case for the plaintiff's failure to timely prosecute it.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.35** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Oshkosh Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include an amended complaint form along with this order.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 28th day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**